**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | **Chapter 7** |
| | : | |
| **ERICA L. KLECKNER,** | : | |
| | : | **Bky. No. 15-11882 ELF** |
| Debtor. | : | |
| | : | |

| | | |
|---|---|---|
| **ERICA L. KLECKNER,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **AES/EDUCAID,** | : | Adv. No. 16-075 |
| | : | |
| Defendants. | : | |
| | : | |

| | | |
|---|---|---|
| **ERICA L. KLECKNER,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **AES/BRAZOS/USBANK,** | : | Adv. No. 16-076 |
| | : | |
| Defendants. | : | |
| | : | |

| | | |
|---|---|---|
| **ERICA L. KLECKNER,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **AES/PHEAA,** | : | Adv. No. 16-083 |
| Defendants. | : | |
| | : | |

# **M E M O R A N D U M**

## I. INTRODUCTION

In these adversary proceedings, Plaintiff Erica L. Kleckner ("the Debtor"), acting pro se, seeks a discharge of several of her student loan debts.[1]  See 11 U.S.C. §523(a)(8). The three (3) adversary proceedings presently before the court are against American Education Services ("AES").[2]  AES has filed a motion for summary judgment in each of the three (3) adversary proceedings, asserting that it is not the holder of the student loans at issue.[3]  The Debtor did not

---

[1]  In Schedule F, filed in the main bankruptcy case, (Bky. No. 15-11882, Doc. # 1), the Debtor listed the following student loans:

| | |
|---|---|
| AES/NCT | $112,484.00 |
| Federal Loan Service | $124,892.00 |
| Wells Fargo Bank | $ 15,055.00 |
| Citibank | $  5,694.00 |
| VSAC Loan Services | $  9,084.00 |
| Student Loan Trust | $  5,577.00 |
| AES/Keystone Best | $ 10,640.00 |
| ACS | $ 10,000.00 |
| AES/Educaid | $ 10,000.00 |
| AES/Brazos/US Bank | $  2,771.00 |
| AES/Fleet | $ 16,029.00 |
| AES/PHEAA | $ 24,086.00 |

[2]  In each of these three (3) adversary proceedings, the Debtor named the defendant in an ambiguous manner – adding additional words to the name "AES." However, in each adversary proceeding, the Debtor treated the Defendant as a single entity, serving the Defendant at a single address. For example, in Adv. No. 11-75, in which the Debtor named the defendant as "AES/Educaid," the Debtor effected service at the address provided by AES on its website. There is no indication in the record that the Debtor's intent was to name more than one entity as the defendant in any of the adversary proceedings.

[3]  These three (3) adversary proceedings are only three (3) of nine (9) separate adversary proceedings filed by the Debtor seeking a discharge of her educational loans. (Adv. Nos. 16-075 through 16-083). Of the other six (6) adversary proceedings, four (4) have been dismissed for failure to effect service of the complaint and summons and two (2) are pending and awaiting trial.

file a response in opposition to the motions.

I conclude that AES is entitled to an order granting summary judgment in all three (3) adversary proceedings.

## II.  PROCEDURAL HISTORY

The Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code on March 19, 2015.  The Debtor received a chapter 7 discharge on October 1, 2015 and her case was closed.  (Bky No. 15-11882, Doc. # 24).

On January 1, 2016, the Debtor filed a motion seeking a determination of dischargeability of the student loans she listed on her chapter 7 bankruptcy petition.  I treated the Debtor's request as a motion to reopen her bankruptcy case and reopened the case on February 17, 2016. (Bky No.15-11882, Doc #32).

On March 17, 2016, the Debtor initiated these adversary proceedings by filing three (3) complaints.  AES filed an answer in each of the proceedings.  The Debtor filed amended complaints in each adversary proceeding on July 13, 2016 (collectively, the "Amended Complaints"). (Adv No. 16-075, Doc. # 17; Adv. No. 16-076, Doc. # 17; Adv No. 16-083, Doc. # 13).  AES filed motions for summary judgment ("the Motions") in the adversary proceedings on August 19, 2016.[4]  (Adv. No. 16-075, Doc. # 22; Adv. No. 16-076, Doc. # 21; Adv. No. 16-083, Doc. # 17).

---

[4] AES did not properly notice the Motions in accordance with our local rules and was directed to do so by Orders, dated September 6, 2016.  (See A16-075, Doc. # 23; A16-076, Doc. # 22; A16-083, Doc. # 18).  AES then corrected the procedural defect.

The Debtor did not respond to the Motions.

### III.  SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted when, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  E.g., In re Asbestos Products Liab. Litig. (No. VI), 2016 WL 4750507, at *3 (3d Cir. Sept. 13, 2016); Seamans v. Temple Univ., 744 F.3d 853, 859 (3d Cir. 2014); In re Bath, 442 B.R. 377, 387 (Bankr. E.D. Pa. 2010).

Stated slightly differently, summary judgment may be entered if there are no disputed issues of material fact and the undisputed facts would require a directed verdict in favor of the movant.  See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).

When deciding a motion, the court's role is not to weigh the evidence, but to determine whether there is a disputed, material fact for resolution at trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  A genuine issue of material fact is one in which sufficient evidence exists that would permit a reasonable fact finder to return a verdict for the non-moving party.  Id. at 248.

If the moving party does not bear the burden of proof at trial, then the movant must demonstrate the absence of a disputed issue of material fact, and an entitlement to judgment in its favor may be established in either of two (2) ways.

First, if the movant presents evidence establishing that the undisputed facts negate at least one (1) element of the respondent's claim, the movant is entitled to summary judgment.  In re Polichuk, 506 B.R. 405, 422 (Bankr. E.D. Pa. 2014) (citing Quaker State Minit-Lube, Inc. v.

Fireman's Fund Ins. Co., 868 F. Supp. 1278, 1287 n.5 (D. Utah 1994)).

Second, the movant may obtain summary judgment by demonstrating that the responding party lacks evidence to support an essential element of its claim.  See, e.g., Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996); Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir. 1987).

### IV.  DISCHARGEABILITY OF STUDENT LOAN DEBT

The discharge of student loans is governed by 11 U.S.C. §523(a)(8), which provides:

> (a)   A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt --
>
> (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for –
>
> > (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or part by a governmental unit or nonprofit institution; or
> >
> > (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
> >
> > (B) any other education loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual . . . .

11 U.S.C. §523(a)(8).

A debtor seeking to discharge student loan debt governed by §523(a)(8) assumes the burden of establishing that excepting that debt from discharge will cause the debtor and his or her dependents "undue hardship."  See In re Faish, 72 F.3d 298, 304-05 (3d Cir. 1995); In re Zierden-Landmesser, 249 B.R. 65, 69-70 (M.D. Pa. 2000).

Congress enacted §523(a)(8) to foster "the twin goals of rescuing the student loan program from fiscal doom and preventing abuse of the bankruptcy process by undeserving debtors." In re Pelkowksi, 990 F.2d 737, 743 (3d Cir. 1993).

The Third Circuit in Faish adopted the three-part test for evaluating whether "undue hardship" exists set forth in Brunner v. New York State Higher Educ. Servs. Corp., 831 F.2d 395 (2d Cir. 1987):

(1) present inability to repay the loan while maintaining a minimal standard of living;

(2) additional circumstances suggesting that the present inability to pay will continue for a significant period of the loan's repayment period; and

(3) a past, good faith effort to repay the loan.

In re Brightful, 267 F.3d 324, 327 (3d Cir. 2001).

The debtor bears the burden of establishing each element of the Brunner test by a preponderance of the evidence. See Easterling v. Collecto, Inc., 692 F.3d 229, 231-32 (2d Cir. 2012); see also In re Faish, 72 F.3d 298, 301 (3d Cir. 1995).

## V. DISCUSSION

AES contends that it is not the owner or holder of the student loan debt the Debtor seeks to discharge. If so, the Debtor has sued the wrong party and it is unnecessary to determine whether the student loans at issue imposed an undue hardship on the Debtor.

### A. Categorizing the Relevant Loans

The Amended Complaints are sparse and contain almost no information about the Debtor's student loans. The Debtor merely asserts conclusorily that AES "is a creditor and/or a holder in due course of the rights to a student loan made to the Plaintiff." (Amended Complaints ¶7). The Amended Complaints do not identify any specific student loans; nor do they specify when the loans were made, or the amounts of the loans.[5]

In the Motions, AES provides documentation to fill in some of this informational gap. Based on three (3) affidavits (collectively, the "Affidavits")[6] of M. Tyler Baer ("Baer"), Vice President of the Commercial Operations Division of AES, the loans may be categorized as follows:

| Adv. No. | Approximate Loan Amount | AES' Relationship |
| --- | --- | --- |
| 16-075 | $17,939.98[7] | loans originated by Wells Fargo bank in 2006-07; serviced by AES |
| 16-076 | $2,764.17[8] | loan originated by Brazos/US Bank in 2007; serviced and guaranteed by AES; consolidated by U.S. Dep't of Education in 2014 |

---

[5] The Debtor's Schedule F lists several entities holding student loans in varying amounts.

[6] The Affidavits are similar, but not identical.

[7] (See Adv. No. 16-075, Motion Exs. B-1, C-1).

[8] (See Adv. No. 16-076, Motion Ex. C).

| 16-083 | $62,445.16[9] | loans disbursed in 2006-07; serviced and guaranteed by AES; consolidated by U.S. Dep't of Education in 2014 |
|---|---|---|

As indicated in the above table, for purposes of the Motions, the loans fall into two (2) categories. The first category (Adv. No. 16-075) is the loan that AES merely serviced. In the second category (Adv. Nos. 16-076 and 16-083) are loans that AES guaranteed and serviced, but that were later consolidated by the U.S. Department of Education (the "DOE").

In all three (3) adversary proceedings, AES seeks summary judgment on the ground that the loan is owned by some other entity; i.e., that it is not the creditor.

### B. The First Category - Adv. No. 16-075 Loans

Little discussion is necessary with respect to the loans referenced in Adv. No. 16-075. The Baer Affidavit submitted in support of the Motion avers that Wells Fargo was the holder of the loan note and that AES was nothing more than the loan servicer. There is no contrary evidence. This satisfies AES' burden on summary judgment. See In re Bennett, 2015 WL 5602881 (Bankr. M.D.N.C. Sept. 22, 2015); In re Hubbard, 2014 WL 1654703 (Bankr. E.D. Tenn. Apr. 25, 2014); In re Aalabdulrasul, 2012 WL 1597277 (Bankr. N.D. Iowa May 7, 2012).

### B. The Second Category - Adv. Nos. 16-076 and 16-083

The disposition of the Motions relating to the loans in the second category (Adv. Nos. 16-076 and 16-083) is slightly more involved because the record indicates that AES also was a

---

[9]     (See Adv. No. 16-083, Motion Exs. A-3, B-3, C-3, D-3, E-3, F-3, G-3, H-3).

guarantor of the subject loans. As guarantor, it was certainly possible that, upon default, it could have become the holder of the loan note. However, the summary judgment record negates this possibility.

In support of its Motions, AES submitted the Baer's Affidavits.. In the Affidavits, Baer states that PHEAA operates under the name AES, which acts as its loan servicer. (Id. ¶ 4). Baer further avers that AES is not the owner of any of the subject loans because on February 13, 2014, the loans were transferred as part of a loan consolidation. (A16-076, Doc. # 21 ¶6; A16-083, Doc. # 17 ¶7).

Baer's Affidavits are supported by additional documentary evidence. Attached to each Affidavit are the Federal Stafford Loan Master Promissory Note, a Federal Direct Consolidation Loan Verification Certificate, and what appears to be an internal loan account statement.

The loan account statements indicate that the DOE made full payment on the loans on February 13, 2014, a date that corresponds with statements made in the Affidavit. Each of the payments is close in amount to the original loan disbursements so that one may infer that the payoff included accrued interest. Further, there is a notation that "interest [was] paid thru: 02/12/14."

The Federal Direct Loan Consolidation Loan Verification Certificates, attached to the Affidavits, refer to the William D. Ford Direct Loan Program. 20 U.S.C. §§ 1087a, et seq. This underlying statute and the regulations thereunder (referenced in the Certificate) also are consistent with the factual statements in the Affidavits.

The William D. Ford Direct Loan Program is a federal loan program administered under Title IV of the Higher Education Act, 20 U.S.C. §§1070 et seq. The federal government provides

funds to eligible borrowers through participating higher education institutions. See 20 U.S.C. §1087b(a). Under the program, borrowers also may consolidate certain federal education loans into a Direct Consolidation Loan. See 34 C.F.R. §685.220.

The corresponding federal regulations for the Direct Loan Program describe the consolidation process under the program:

(1) The holder of a loan that a borrower wishes to consolidate must complete the Secretary of Education's request for certification of the amount owed within 10 business days. See 34 C.F.R. §685.220(f)(1)(I).

(2) Once the borrower's application is approved, the Secretary pays each holder of a loan the amount necessary to discharge the loan. See id. §685.220(f)(1)(ii).

(3) The principal balance of a **Direct Consolidation Loan held by the Secretary** is equal to the sum of the amounts paid to the holders of the consolidated loans. See id. §685.220(f)(3) (emphasis added).

Under the Higher Education Act, once the loans are consolidated, the Secretary of Education pays off the current holder of the loan. See 20 U.S.C.A. § 1078-3(b)(1)(D) ("the proceeds of each consolidation loan will be paid by the lender to the holder or holders of the loans so selected to discharge the liability on such loans"); 34 C.F.R. §685.220(f)(1)(ii).

In short, the Baer Affidavits, the additional documentation and federal law are consistent and sufficient to establish that, due to the loan consolidation, the subject loans are held by a party other than AES.

## VI. CONCLUSION

On this record, AES has put forth competent evidence showing that: (1) the loan in the first category is not now and never was held by AES; and (2) the loans in the second category

were consolidated under the Direct Consolidation Loan Program and are now held by the DOE, not AES. The Debtor presented no contrary evidence. Therefore, AES has established that it is not the owner or holder of the Debtor's student loans, negating an element of the Debtor's nondischargeability claim under 11 U.S.C. §523(a)(8).

For these reasons, summary judgment will be entered in favor of AES and against the Debtor. An appropriate order will be entered.

Date: **November 7, 2016**

**ERIC L. FRANK**
**CHIEF U.S. BANKRUPTCY JUDGE**

cc:    Erica L. Kleckner
       448 Seville Street Unit Two
       Philadelphia, PA 19128-3633